*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0047p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

JOHN ORTON,

          *Plaintiff-Appellant,*

    *v.*

JOHNNY'S LUNCH FRANCHISE, LLC;
ANTHONY J. CALAMUNCI,

          *Defendants-Appellees.*

No. 10-2044

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 10-11013—Gerald E. Rosen, Chief District Judge.

Argued: January 10, 2012

Decided and Filed: February 21, 2012

Before: MERRITT and MOORE, Circuit Judges; MAYS, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** David M. Blanchard, NACHT, ROUMEL, SALVATORE, BLANCHARD & WALKER, P.C., Ann Arbor, Michigan, for Appellant. Anthony J. Calamunci, ROETZEL & ANDRESS, LPA, Toledo, Ohio, for Appellees. **ON BRIEF:** David M. Blanchard, NACHT, ROUMEL, SALVATORE, BLANCHARD & WALKER, P.C., Ann Arbor, Michigan, for Appellant. Anthony J. Calamunci, ROETZEL & ANDRESS, LPA, Toledo, Ohio, for Appellees.

    MOORE, J., delivered the opinion of the court, in which MAYS, D. J., joined. MERRITT, J. (p. 12), delivered a separate concurring opinion.

_____

[*]The Honorable Samuel H. Mays, United States District Judge for the Western District of Tennessee, sitting by designation.

———————

**OPINION**

———————

KAREN NELSON MOORE, Circuit Judge. John Orton appeals from the district court's dismissal of his claims against Johnny's Lunch Franchise, LLC, and Anthony Calamunci for unpaid wages and expenses from August 2008 to December 2008. Orton sued under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and various state laws. The district court granted the defendants' motion to dismiss the FLSA claim on the ground that Orton was an exempt salaried employee and subsequently dismissed the remaining state-law claims. Because we hold that Orton has adequately pleaded a claim under the FLSA, we **REVERSE** and **REMAND** for further proceedings.

## I. BACKGROUND

John Orton's complaint alleges that he began working for Johnny's Lunch Franchise ("JLF") in September 2007 as Vice President of Real Estate and Site Selection. His annual base salary was set at $125,000. From September 2007 until August 2008, JLF paid Orton his wages according to plan, although throughout 2008 Orton alleges JLF had trouble making payroll. In August 2008, Orton alleges that JLF ceased paying him any wages even though he did not cease working. On December 1, 2008, Orton along with the entire executive staff was formally laid off. Orton sued his alleged employers JLF and Anthony Calamunci ("Calamunci") in April 2010 for damages stemming from the period he claims he worked but was not paid between August and December 2008.

The defendants moved to dismiss on the basis of Federal Rules of Civil Procedure 12(b)(2), (3), and (6). Initially, the defendants sought dismissal of only Calamunci for failure to state a claim under Rule 12(b)(6), arguing that Calamunci was

not an "employer" within the meaning of § 203(d) of the FLSA.[1] Calamunci concluded this argument by noting that Orton "admits he was an exempt employee with a [sic] annual salary of $125,000. . . . Therefore, [Orton] is 'exempt' from overtime compensation under the [FLSA]." R. 7 (Defs.' Mot. to Dismiss at 4). Calamunci cited no cases or law to make this argument, nor did he argue that this alone warranted dismissal of the entire FLSA claim. Orton, however, responded as if the defendants had moved jointly under Rule 12(b)(6) and addressed both the argument that Calamunci was not an employer and the suggestion that Orton was exempt. Orton explained how Calamunci qualifies as an employer under § 203(d) when one applies the law of this Circuit[2] and argued that the defendants failed to meet their burden of establishing that Orton was exempt during the period they denied him his wages. In their reply, the defendants focused almost entirely on the argument that Orton was an exempt salaried employee under the FLSA and that the complaint could therefore be dismissed in its entirety against both defendants. They argued "[i]n the alternative" that Calamunci was not an employer. Prior to a ruling, Orton sought leave to file a second amended complaint to add further allegations that would more clearly refute the affirmative defense of exemption and establish Calamunci's status as an employer.

On July 20, 2010, the district court issued its opinion granting the defendants' motion to dismiss. *Orton v. Johnny's Lunch Franchise, LLC*, No. 10-11013, 2010 WL 2854303 (E.D. Mich. July 20, 2010). The district court treated the Rule 12(b)(6) motion as jointly sought by the defendants and held that Orton had failed to state a claim against either defendant under the FLSA because "[b]y his own admission, [Orton] is exempt from protection under FLSA." *Id.* at *4. Focusing on the plaintiff's admission that he was owed an annual base salary, the district court concluded: "Nothing in the record indicates that this base salary was subject to reduction because of variations in the quality or quantity of the work performed. Rather, Mr. Orton's allegations suggest only

---

[1]The only arguments advanced by JLF in the motion, which was made jointly with Calamunci, were that dismissal was appropriate under Rules 12(b)(2) and (3) for lack of personal jurisdiction and lack of venue. Those arguments have since been dropped by the defendants and are not before us on appeal.

[2]Calamunci had erroneously cited solely Third Circuit law as controlling.

that Defendants stopped paying him this promised salary because of cash flow issues." *Id.* at *5. The withholding of compensation for several months, if true, would be insufficient according to the district court to convert a position from salary to hourly. *Id.* The district court did not mention who had the burden of establishing Orton's status as exempt.

Having concluded that the FLSA claim was not viable, the district court did not address the arguments with respect to Calamunci's status as an employer and dismissed the state-law claims without prejudice because it decided it "lack[ed] a basis to exercise subject matter jurisdiction" over the state-law claims. *Id.* at *6. The district court denied Orton's motion for leave to file a second amended complaint as moot. *Id.* Orton timely appealed the district court's judgment.

## II.  FLSA CLAIM

We review de novo a district court's decision to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 608-09 (6th Cir. 2009). In reviewing a motion to dismiss, we must accept non-conclusory allegations of fact in the complaint as true and determine if the plaintiff has stated a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009).

### A.  Overview of FLSA Exemptions

The FLSA requires employers to pay minimum wages to certain employees. 29 U.S.C. § 206. Employers must also pay overtime to employees who work more than forty hours a week. 29 U.S.C. § 207. Some employees, however, are "exempt" from these requirements under 29 U.S.C. § 213. Relevant to this case, § 213(a)(1) exempts workers employed in a "bona fide executive, administrative, or professional capacity," as defined by the Secretary of Labor. For each of these three functions, the Secretary of Labor has promulgated rules regarding when an employee qualifies as exempt. *See* 29 C.F.R. § 541.100 (executive employees); 29 C.F.R. § 541.200 (administrative employees); 29 C.F.R. § 541.300 (professional employees). Each rule requires the

defendant to satisfy three "tests" to qualify:  (1) a duties test; (2) a salary-level test; and (3) a salary-basis test.  *See* 29 C.F.R. § 541.700 (duties test); 29 C.F.R. § 541.600 (salary-level test); 29 C.F.R. § 541.602 (salary-basis test); *see also Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 626-27 (6th Cir. 2009).

An employer may raise a plaintiff's status as an exempt employee as an affirmative defense to claims brought under the FLSA.  *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007).  Exemptions, however, "'are to be narrowly construed against the employers seeking to assert them.'"  *Id.* (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).  The employer bears the burden of establishing the affirmative defense by a preponderance of the evidence, and the employer satisfies this burden only by providing "clear and affirmative evidence that the employee meets every requirement of an exemption."  *Id.* (internal quotation marks omitted).

The district court determined that "the parties appear to concede that Mr. Orton's job is administrative in nature," *Orton*, 2010 WL 2854303, at *4,[3] and then concluded that Orton was an exempt salaried employee under all three tests based on the allegations in his complaint.  The district court granted the defendants' motion to dismiss, holding that exempt salaried employees have no claim under the FLSA for back wages.  Because Orton does not challenge the district court's holdings with respect to the salary-level test or the duties test, we review only the district court's conclusions on the salary-basis test.

## B.  Salary-Basis Test

The relevant regulation defining the salary-basis test was updated in 2004 and now states the following:

---

[3] It is unclear where the parties make this concession, or how the single sentence in Orton's complaint summarizing his primary responsibilities would be sufficient for the defendants to meet their burden of establishing that Orton was employed in an administrative capacity, as the district court held he was. *Id.* at *6. We do not address this issue on appeal, however, because Orton has not raised it. At oral argument, Orton conceded that he was employed in at least one of the three relevant capacities: administrative, executive, or professional.

General Rule.  An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.  Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.  Exempt employees need not be paid for any workweek in which they perform no work.  An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business.  If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

29 C.F.R. § 541.602(a) (2004).  The old version stated, in relevant part:  "An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations *if under his employment agreement* he regularly receives each pay period . . . ."  29 C.F.R. § 541.118(a) (1973) (emphasis added).

We addressed at length the impact of the 2004 changes on the salary-basis test in *Baden-Winterwood*, 566 F.3d at 627-28.  The new regulation now "focus[es] on pay received," rather than the terms of the employment agreement, but the regulation still requires that a defendant show that the plaintiff was paid:  "(1) a predetermined amount, which (2) was not subject to reduction (3) based on quality or quantity of work performed."  *Id.* at 627.  The list of deductions that are excepted from this requirement are provided in subsection (b), and include deductions in pay based on absences for personal reasons or sickness in certain circumstances.  29 C.F.R. § 541.602(b).

The new regulations also clarified the effect of an improper deduction on an employee's status as exempt.  29 C.F.R. § 541.603.  An improper deduction alone will not necessarily render an employee non-exempt:  "An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis."  29 C.F.R. § 541.603(a) (2004).  An employer's intent to make improper deductions is demonstrated by "[a]n

actual practice of making improper deductions." *Id.*[4] However, "[i]mproper deductions that are either isolated or inadvertent will not result in loss of the exemption for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions." 29 C.F.R. § 541.603(c).

The district court held that the "Defendants' failure to pay Mr. Orton for several months [did not] convert[] his job from a salary-based position to an hourly-based position." *Orton*, 2010 WL 2854303, at *5. Relying primarily on an Eleventh Circuit case, the district court stated that "administrative employees are exempt from coverage within the meaning of the FLSA based on the salary that they were owed under their employment agreements and not based on the on [sic] compensation that they actually received." *Id.* (citing *Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1365 (11th Cir.), *cert. denied*, 522 U.S. 949 (1997)). The district court's holding is incorrect for two reasons, both of which warrant reversal.

First, the district court's holding rests on an outdated rule of law. The new (2004) regulations, which all parties correctly agree are applicable in this case, establish that employment agreements are no longer the relevant starting point for whether an employee is paid on a salary basis. *Baden-Winterwood*, 566 F.3d at 627. The question is therefore not what Orton was owed under his employment agreement; rather, the question is what compensation Orton actually received.

Second, the district court neglected to place the burden of establishing the exemption on the defendants, failing even to acknowledge that the exemption is an affirmative defense. The district court instead focused solely on the sufficiency of Orton's complaint and the not-yet-created record in this case: "Nothing *in the record* indicates that this base salary was subject to reduction because of variations in the quality or quantity of the work performed. Rather, *Mr. Orton's allegations suggest only*

---

[4] These revisions were partly in response to the Supreme Court's holding in *Auer v. Robbins*, 519 U.S. 452 (1997), which held that the exemption should be denied if the employer either had an actual practice of making deductions based on quantity or quality of work, or had a policy that created a significant likelihood of such deductions. *See Baden-Winterwood*, 566 F.3d at 627-28 (discussing *Auer*). The changes eliminated the "significant likelihood" test. *Id.* at 628.

that Defendants stopped paying him this promised salary because of cash flow issues." *Orton*, 2010 WL 2854303, at * 5 (emphasis added). On a motion to dismiss, there is no fact "record," only the plaintiff's allegations. Here, Orton clearly alleged that from August 2008 to December 2008 his salary was reduced to zero. The only mention as to the potential cause of the deduction in Orton's complaint is that the "Defendants had trouble making payroll and paying expenses." R. 4 (Am. Compl. at ¶ 12). Whether Orton's allegations "suggest" one reason for the deduction in salary is irrelevant; his allegations do not preclude multiple reasons for the deduction, and it was the defendants' burden—not the plaintiff's—to establish that the reason for the deduction was proper. *See Vance v. Terrazas*, 444 U.S. 252, 270 n.11 (1980) (citing 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1276 (1969)). Orton's allegations are insufficient to establish as a matter of law that the deduction in his pay was proper under either § 541.602(a) or one of the exceptions in § 541.602(b).

Furthermore, even if Orton had explicitly pleaded that the sole reason for the deduction was because JLF was experiencing a decline in cash flow, this alone would tell us nothing about whether the deduction was proper under the FLSA. For example, a company experiencing cash-flow issues cannot claim the exemption if the company prevents an otherwise salaried employee from coming in three days a week and then pays him less accordingly. Such a deduction in pay would undeniably be due to an absence occasioned by the employer, *see* 29 C.F.R. § 541.602(a), even though the employer decided to take the action due to cash flow problems. The regulation makes no exception for deductions in pay just because they were motivated by cash flow shortages.[5]

---

[5]That is not to say a company with cash flow issues is left with no recourse. Nothing in the FLSA prevents such an employer from renegotiating in good faith a new, lower salary with one of its otherwise salaried employees. The salary-basis test does not require that the predetermined amount stay constant during the course of the employment relationship. Of course, if the predetermined salary goes below a certain amount, the employer may be unable to satisfy the salary-level test, which explicitly addresses the amount an employee must be compensated to remain exempt. *See* 29 C.F.R. § 541.600(a) ("To qualify as an exempt executive, administrative or professional employee under section 13(a)(1) of the Act, an employee must be compensated on a salary basis at a rate of not less than $455 per week . . . .").

JLF and Calamunci also seek to distinguish between an employee whose pay was reduced partially and one whose pay was reduced entirely. At first glance, this argument has some support in pre-2004 case law. *See, e.g.*, *Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1365 (11th Cir. 1997) (rejecting FLSA claim for salaried employees who were not paid in accordance with their contract); *Donovan v. Agnew*, 712 F.2d 1509, 1517 (1st Cir. 1983) (holding salaried employees not entitled to minimum wages despite failure of employer to pay their contractual wages during last two weeks of company's operation); *Reich v. Midwest Body Corp.*, 843 F. Supp. 1249, 1250-51 (N.D. Ill. 1994) (holding salaried employee remained exempt despite failure of employer to pay wages for the final three weeks); *Kawatra v. Gardiner*, 765 S.W.2d 771, 774-75 (Tenn. Ct. App. 1988) (failure to pay salaried employee's wages did not remove exemption because language in contract trumped amount of funds employee actually received).[6] The focus in all of these cases, however, was on the terms of the employment agreement. Therefore, to the extent these cases are at all instructive regarding the new regulations, they support the general principle that the *reasons* for the reductions in pay are dispositive, not the amount.

The burden should have been placed on the defendants to show that Orton "receive[d] . . . [a] predetermined amount." 29 C.F.R. § 541.602(a). If he did not, the defendants must have shown by a preponderance of the evidence that their failure to pay him the predetermined amount was proper either under § 541.602(a) or under one of the delineated exceptions in subsection (b). We therefore reverse the district court's dismissal of Orton's FLSA claim and remand for further proceedings.

---

[6] *But see Takacs v. Hahn Auto. Corp.*, 246 F.3d 776, 781 (6th Cir.) (actual practice of suspending managers without pay for improper reasons rendered them not exempt), *cert. denied*, 534 U.S. 889 (2001); *Avery v. City of Talladega*, 24 F.3d 1337, 1341-42 (11th Cir. 1994) (three-day suspension without pay for improper reasons "destroyed" employee's salaried status and entitled employee to overtime).

### III.  LEAVE TO FILE SECOND AMENDED COMPLAINT

Orton sought leave to amend his complaint for a second time to add allegations that would address the affirmative defenses, to plead more accurately Calamunci's role as an employer, and to add a new defendant in light of the sale of JLF.  The district court did not consider the motion, deeming it moot.  *Orton*, 2010 WL 2854303, at *6.  We review the denial of a motion for leave to amend for abuse of discretion, except when the denial was due to futility, in which case we review de novo.  *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002).  Here, however, the motion for leave to amend was not addressed on the merits; rather, the district court deemed it moot upon the dismissal of the complaint on other grounds.  Because we vacate the grounds on which dismissal was predicated, Orton's motion must be considered on the merits on remand.  *See UAW Local 594 v. Int'l Union, UAW*, 956 F.2d 1330, 1339 (6th Cir. 1992).  We therefore vacate the district court's order with respect to the motion for leave to file the second amended complaint.

### IV.  STATE-LAW CLAIMS

After dismissing Orton's FLSA claim, the district court incorrectly held that it no longer had supplemental jurisdiction over Orton's related state-law claims.  The district court had original subject matter jurisdiction over Orton's FLSA claim pursuant to 28 U.S.C. § 1331; it therefore had supplemental jurisdiction over Orton's related state-law claims under 28 U.S.C. § 1367.  Such supplemental jurisdiction does not disappear when the federal claim that gave rise to original jurisdiction in the first place is dismissed.  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1866-67 (2009).  Following such a dismissal, the district court in its discretion may properly choose whether to exercise § 1367(a) jurisdiction over the supplemental state-law claims; however, such a decision is "purely discretionary."  *Id.*  We therefore reverse the district court's dismissal of Orton's state-law claims for jurisdictional reasons.

## V.  CONCLUSION

For the aforementioned reasons, we **REVERSE** the district court's dismissal of the plaintiff's complaint and **REMAND** for further proceedings consistent with this opinion.

---

**CONCURRENCE**

---

MERRITT, Circuit Judge, concurring.  I agree with the court that the "exemption" issue should be decided after the defendant describes the issue in an affirmative defense and after further proceedings.  That was not done here.  The district court decided the case only on a motion to dismiss under Rule 12(b)(6).  We do not know what the facts are.  It may be that the parties entered into a new agreement based on the company's cash position.  We do not know.  I would not speculate on how the exempt status statutory language and regulations should be interpreted for various fact patterns.  Nor would I indicate a view of what the result would be if the company ran out of cash and so informed its executive employees who decided to stay on the job to see if the company could get over its problems.